# Owensboro Shovel & Tool Company v. Moore.

(Decided June 17, 1913.)

## Appeal from Ballard Circuit Court.

1. Corporations—Actions—Venue—Process.—An action against a corporation for breach of contract may be brought in the county where the contract was made or to be performed; and summons thereon may be sent to the county of the home office of the company and there served.

2. Fraud—Statute of Frauds—Agreements Not To Be Performed Within Year—Possibility of Performance.—A contract, if capable of being performed, although it may not actually be performed, within a year, is not within the statute of frauds.

3. Trial—Arguments of Counsel—Comments Not Supported by Record.—Where a lawyer, in argument to the jury, makes statements not supported by the record, the trial judge should, without waiting for objections, promptly reprimand the offending counsel, charge the jury to disregard his statements, and if the comments are of such prejudicial nature as improperly to influence the jury, he should set aside any verdict, rendered in favor of such counsel.

4. Damages—Contract—Breach—Duty to Minimize.—Where one has contracted to do a specific work, at an agreed price, upon breach of the contract by the other party, he is under no duty to minimize the damages, unless the agreement exacts of him a personal service or inhibits him from engaging in other employment of like nature.

5. Trial—Instructions—Measure of Damges.—In an action for damages for breach of contract to do a specific thing, at an agreed price, the measure of damages is the reasonable profits the party would have made, had he been permitted to complete the contract.

HENRY F. TURNER and SWEENEY, ELLIS & SWEENEY for appellant.

J. E. WICKLIFFE for appellee.

Opinion of the Court by Judge Lassing—Reversing.

The Owensboro Shovel & Tool Company is a manufacturing corporation engaged in business in Owensboro, Kentucky. It owned certain timber rights in Ballard County. George Moore owned a saw mill. At the instance of C. P. Moore, an employe of the Owensboro Shovel & Tool Company, George Moore moved his saw mill to a point upon or near the land upon which the timber owned by the Tool Company stood and, under a verbal agreement with C. P. Moore, sawed something

like 2,000 railroad ties. A difference arose between George Moore and C. P. Moore, representing the Tool Company, which resulted in the Tool Company's refusal to furnish any more timber at the saw mill to be sawed into ties.

Thereupon, George Moore filed suit in the Ballard Circuit Court in which he sought to recover $2,000, alleged to be the profit which he would have made had he been permitted to carry out his contract with the defendant, Tool Company, and the further sum of $600, alleged as expense incurred by him in moving his mill to and from the defendant's lands. He alleged in the petition that the contract, under which he agreed to saw this timber, was a verbal one, by the terms of which he was to receive eight cents per tie for sawing 50,000 ties in 250 days. The defendant entered its appearance for the purpose of moving to quash the return of the summons, it having been executed upon its agent, C. P. Moore. Thereupon, plaintiff filed an amended petition, making C. P. Moore a party defendant and alleging that the contract was made with C. P. Moore and the Owensboro Shovel & Tool Company, and that it was breached to his damage as set out in the original petition.

A special demurrer, a general demurrer and a motion to strike were, in turn, filed by the defendants, and each being overruled, they filed their separate answers. C. P. Moore denied having any interest in the contraact and alleged that, in making the arrangement which he did with plaintiff, he acted simply as the agent of the Owensboro Shovel & Tool Company. The Tool Company, in its answer after traversing all the affirmative allegations of the original and amended petitions, pleaded the statute of frauds and also, by way of set-off, that plaintiff had damaged it in the sum of $800 by his failure and refusal to saw into lumber timber growing on a tract of land near the mill site, which he had agreed to saw and which they had been unable to procure any one else to saw after his failure and refusal to do so. A reply traversing the affirmative matter in the answers completed the issue. The case was submitted to a jury, with the result that plaintiff recovered a verdict for $400 against the Owensboro Shovel & Tool Company. A peremptory instruction was, at the conclusion of all the evidence, given in favor of the defendant, C. P. Moore. A new trial being refused, the Owensboro Shovel & Tool Company appeals.

Several grounds are relied upon for reversal, among which may be noted, first, error of the court in refusing to quash the return on the summons; second, error of the court in refusing to sustain the special demurrer to the petition as amended; third, error in instructing the jury; and fourth, misconduct of counsel for plaintiff in argument.

It is insisted that, as appellant's place of business was in Owensboro, Daviess County, Kentucky, and all of its principal officers reside therein, it should have been sued in that county, and the court erred in not so holding on its motion to quash the return of the summons served upon its agent, C. P. Moore, in Ballard County. The petition alleges that the contract was made and to be performed in Ballard County. Section 72 of the Civil Code, after excepting certain actions mentioned in other sections of the Code, provides: "An action against a corporation which has an office or place of business in this State, or a chief officer or agent residing in this State, must be brought in the county in which such office or place of business is situated or in which such officer or agent resides; or, if it be upon a contract, in the above named county, or in the county in which the contract is made or to be performed." * * * Under the latter clause of this Code provision, appellee was clearly authorized to institute his suit in Ballard County and to send his summons to Daviess county, the home county of the corporation, for service there. This was done on the petition as amended, and it is not complained that the service in Daviess County was not made upon the proper officer of the company. Service of summons upon C. P. Moore, the agent in Ballard County was unnecessary.

In City of Covington v. Limerick, 19 Rep., 330, it was held that in an action upon a contract the court of the county in which the contract was performed had jurisdiction, and summons might be executed in another county. In Glasscock v. Louisville Tobacco W. H. Co., 31 Rep., 702, it was held that an action might be brought upon a contract in the county where the essential part of the contract was to be performed, although service was had in another county.

The contract, whatever it was, was entered into by C. P. Moore as agent for the Owensboro Shovel & Tool Company, in Ballard County and was to be wholly performed in that county, and under this state of facts, the

trial court properly held that the suit might be prosecuted in Ballard County.

Since the peremptory instruction was given in favor of the defendant, C. P. Moore, it becomes necessary to pass upon the court's ruling on the special demurrer or the motion to strike, as the purpose of each was to eliminate C. P. Moore from the proceeding.

On the contention that the contract, as alleged, was within the statute of frauds, it is sufficient to note that under its terms it was capable of being performed within a year, indeed, within the time alleged .by appellee within which it was to be performed, to-wit: 250 days. It is insisted by counsel for appellant that the evidence showed that appellee would not have been able, with the mill power owned by him, to have completed the contract within a year, but he overlooks the fact that appellee was not limited in the performance of this contract to the use of the single mill owned by him. While it is not altogether clear from the evidence that he unaided could have completed the contract within a year, he could certainly have done so by procuring additional sawing facilities. In .determining whether a contract falls within the statute of frauds, the inquiry is not directed toward ascertaining whether or not the contract would actually be performed within a year but whether or not it could be performed within a year. Ford Lumber & Mfg. Co. v. Cobb., 138 Ky., 174.

This leaves but two grounds relied upon for reversal, and we will consider them in the inverse order of their importance. In addressing the jury in his closing argument, counsel for appellee said: "The defendant notified the plaintiff he would have to quit sawing for it because it was losing money on the ties, and that was the reason the defendant stopped plaintiff from sawing—was because defendant said it was losing money on the ties and was not going to have any more sawed." While the record does not show what the ruling of the judge was, it is apparent that this statement was not excluded from the consideration of the jury or the jury was not warned to disregard it, for it is made one of the grounds for a new trial.

There is no evidence in the record which even inferentially supports this argument or statement of counsel, and it was highly improper, and under the wide range which the evidence was permitted to take calculated to be prejudicial. We have so often held that trial courts

should not permit attorneys, in the presentation of their
client's case, to make statements not supported by the
record, that it would seem almost unnecessary to repeat
it here. We have likewise held that where counsel per-
sists in violating this rule and recovers a verdict, he
should be deprived of the fruits of victory thus earned
by having the verdict set aside and a new trial awarded.
If trial courts would rigidly enforce this rule and
promptly set aside verdicts in cases where lawyers had,
in argument over the objection of opposing counsel, made
prejudicial statements not supported by the record, law-
yers would cease offending in this particular. Laxity
tends to encourage rather than discourage this practice
of indulging in too wide a range on the part of counsel
in the presentation of their cases. It should not be tol-
erated. When a lawyer makes a statement of fact wholly
unsupported by the record, the trial court should, with-
out waiting for objection to be made, promptly repri-
mand the lawyer and instruct the jury to disregard the
statement, and where he regards it of such a prejudicial
nature that it may improperly influence the jury, he
should set aside any verdict obtained in favor of counsel
so offending.

Lastly, it is insisted that the court erred in instruct-
ing the jury, and this point is well taken. The issue, as
made by the pleadings and proof, was a narrow one. Ap-
pellee alleged that he entered into a contract with the
Tool Company, by the terms of which he agreed to saw
for it 50,000 ties at eight cents per tie, and that the Tool
Company breached this contract by refusing to furnish
the timber out of which to saw the ties. The Tool Com-
pany alleged that, under the arrangement made with ap-
pellee, no definite number of ties were to be sawed, but
that he was to saw into lumber and ties such timber as it
furnished to him at his said mill.

While appellee, in his pleadings sought to recover of
appellant the money which he had expended in moving
his mill to the land from which the timber was to be cut
and sawed and in moving it from the land after his con-
tract was alleged to have been breached, his evidence fails
to support the pleadings in this particular. He testifies
unequivocally that he was to move the mill at his own ex-
pense to the land and do the sawing at eight cents per
tie, and the item of $600, set up in his pleadings as dam-
ages sustained by him in moving his mill to and from
the land should be dismissed from consideration.

Appellant, in its answer, pleaded that appellee, during a part of the time, could have procured other timber to saw and in this way have minimized the damages sustained by him but that he made no effort to do so, and considerable proof was introduced in support of this allegation. This plea, and the proof offered in support of it, should have been rejected by the court, as it constituted no defense to the cause of action set out in the petition. In an action for damages growing out of a breach of contract of this character, it is not incumbent upon the party whose contract is breached to attempt to procure other employment of the same nature, with the view of minimizing the damage. In actions for breach of contract for personal services, the rule is well settled that it is the duty of one, asserting damage because of such breach, to minimize his claim for damages by seeking other employment of the same nature, for in such cases the contract cannot be performed for two different parties.

In Hollerbach & May Contract Co. v. Wilkins, 130 Ky., 51, this court had under consideration an action for breach of contract for the sale and delivery of a specific amount of broken rock. It was contended that the complainant should have minimized his damage, and in disposing of the question the court said:

"We do not mean to be understood as limiting the application of the principle of avoidance of damages to breaches of contracts for personal service; on the contrary, the rule is of much broader application, and it would, perhaps, not be going too far to say that the duty of those complaining of violations of contracts to minimize their damages as much as the exercise of reasonable diligence will accomplish is the general rule appertaining to the right to recover damages therefor. The complainant should reduce his damages whenever the principle can be applied without sacrificing any substantial right. A fair illustration of the general application of the rule may be found in the supposition that the breach of the contract under discussion had been by appellee's refusing to deliver to appellant the stone contracted for. It would in the supposed case have been the duty of appellant to go out into the market and buy the stone, and it could only hold appellee liable for the difference between the contract price and what it had to pay for the stone on the market. This, from the very nature of the case, would cover all the damage it sus-

tained by the breach of the contract. But the same principle is not applicable to the breach of contract complained of in this record. Appellee was entitled to enjoy the benefit of the profits of his contract with appellant, and, if he could have made as beneficial a contract with another, he was entitled to the benefits of that also. In other words, he was entitled to carry forward as many such contracts as he could make, and, if he succeeded in making more than one, he was entitled to both profits. Receiving the profits of one such contract would not tend to recoup his loss by reason of the breach of the other.''

In Watson v. Gray's Harbor Brick Co., 3 Wash., 283, it was held that, where one who has contracted to do a specific piece of work at an agreed price is prevented from doing so by the wrongful act of the other party, the profit made by the contractor out of other jobs during the time he would have spent on the one in suit, had it been carried out, cannot be shown in mitigation of damages.

As stated, the rule requiring the avoidance of damages has no application to a case of this character. Had the contract required of appellee that he give the sawing his personal attention, he would then have been under the duty of minimizing his damage. Frazier v. Clark, 88 Ky., 260.

From a careful consideration of the pleadings and evidence in this case, we are of opinion that the contract under consideration does not fall within that class or line of cases which hold that it is incumbent upon the complainant in an action for breach of contract to minimize his damage by seeking other employment. There is nothing in the contract, either as set up by appellee or as pleaded by appellant, from which it could be fairly inferred that it was within the contemplation of the parties, when it was executed, that the said George Moore was to give the sawing his personal attention, or that he was prohibited from sawing for others during the time provided for its execution. Hence, the jury, in the instructions, should have been limited to a consideration of the question as to whether or not the contract was as alleged by appellee, if it was, its finding should have been for him; if, on the other hand, the contract was as alleged by appellant, its finding should have been for it. On the measure of damages, appellee's recovery should have been limited to the fair and reasonable

profit which the evidence showed he would have made, had he been permitted to carry out the contract.

. Because of the improper argument of counsel and error of the court in instructing the jury, the judgment is reversed and cause remanded for further proceedings not inconsistent herewith.